**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

AMBER ALVEY,

             PLAINTIFF,                         Case No:      8:15-cv-1861-VMC-AEP

v.

BOB GUALTIERI, in his official capacity
as Sheriff of Pinellas County,

             DEFENDANT.
_____/

**PLAINTIFF'S RESPONSE AND INCORPORATED MEMORANDUM OF LAW IN
OPPOSITION TO DEFENDANT'S EMERGENCY MOTION FOR PROTECTIVE
ORDER PRECLUDING DEPOSITION OF DEFENDANT'S GENERAL COUNSEL**

Pursuant to Rule 26(c) of the Federal Rules of Civil Procedure and Local Rule 3.01, Plaintiff, Amber Alvey, through her undersigned counsel, hereby responds in opposition to Defendant Sheriff Bob Gualtieri's Emergency Motion for Protective Order Precluding Deposition of Defendant's General Counsel and Incorporated Memorandum of Law[1] (Doc. 41) (Motion for Protective Order). Plaintiff has served a non-party subpoena to take the deposition of Shannon Lockheart on June 27, 2016. (Doc. 40-7, at 4.) Ms. Lockheart is the individual who verified Defendant's interrogatory responses in this action. (Doc. 41-3 at 15.) However, Defendant has objected on the basis that Ms. Lockheart is General Counsel for the Pinellas County Sheriff's Office.

---

[1] This is Defendant's second motion for protective order concerning the subpoena issued by Plaintiff to Shannon Lockheart in this matter. The first motion filed by Defendant on June 16, 2016, was not styled as an "emergency" motion (Doc. 40). After Plaintiff's counsel informed Defendant's counsel that the motion uploaded in Doc. 40 only had one page for the memorandum, the second motion was filed by Defendant as an "emergency" motion. (Doc. 41.)

The deposition of Ms. Lockheart should be permitted because while a corporate Defendant is permitted to have a representative of the corporation or entity verify its interrogatories, that person is still subject to discovery. The deposition of such a witness is a matter routinely contemplated and permitted by Rules 23 and 34 of the Federal Rules of Civil Procedure where the individual has information relevant to the action.

Moreover, even assuming *arguendo* that, as Defendant argues, the test for whether a party may be permitted to depose a *party's* attorney applied here, as explained herein, Plaintiff meets these factors. Plaintiff has deposed witnesses identified by Defendant in its Rule 26 disclosures, interrogatory responses and documents to obtain information about who made certain decisions that form the basis of the violations of the Americans with Disabilities Act that are alleged in this matter. These witnesses, including 30(b)(6) designated witnesses, have testified to contradictory and different information than was provided for these same individuals in Defendant's verified interrogatory responses.

The issue here is simple: Plaintiff needs to know which facts are true to prove her claim. At this point, only the person who verified the interrogatories has the information to clarify the factual bases for these issues to determine which facts are true and which are false.

In the alternative, if the Court finds that Plaintiff cannot depose Ms. Lockheart, Defendant should be required to produce a non-attorney corporate representative to verify the interrogatories that can be subject to a deposition to clarify the inconsistencies between the interrogatories and witness testimony.

2

## I.        FACTUAL BACKGROUND

Plaintiff brought this action to vindicate her rights under Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132, based on Defendant's failure to provide reasonable modifications for Plaintiff's physical disabilities to allow her to access Defendant's programs and benefits at Pinellas Safe Harbor (PSH), an emergency homeless shelter operated by the Defendant and Defendant's subsequent decision to exclude her from the programs and benefits at PSH.  (Doc. 1 ¶ 2.) A domestic violence incident left Ms. Alvey with physical disabilities and limited mobility; she has epilepsy, she walks with a cane and takes medications to manage her conditions, including dealing with chronic pain.  (Doc. 1 ¶¶ 9, 19, 21.)  Defendant's failures caused Plaintiff's hospitalization, injuries and damages, including emotional distress. (Doc. 1 ¶ 64.)

Upon her admission to PSH, the staff identified her as a person with a disability, but did not provide any requested reasonable modifications or accommodations to PSH rules and policies which included: a bunk bed instead of a floor mat to sleep on because of her disabilities; access to her medications as prescribed; re-entry to the facility when she got back from the hospital; and staff to return her medications after she was told she was banned from the facility when she returned from the hospital after she fell and injured herself because staff required her to sleep on a mat on the floor.  (Doc. 1 ¶¶ 19, 20, 23-26, 34-37, 39, 41.)

Based on the information provided in Defendant's Rule 26 Initial Disclosures (Doc. 41-1), the facts as specified in Defendant's Verified Responses and Objections to Plaintiff's First Interrogatories (Doc. 41-3) and Defendant's Responses to Plaintiff's First Request to Produce Documents, Plaintiff noticed the depositions of individuals who were

identified as: (1) being personally involved in the incident with Ms. Alvey, (2) having made key decisions related to whether or grant or deny Ms. Alvey's requests for reasonable modifications at PSH, (3) having determined that she was "medically unfit" to continue to stay at PSH, and (4) having knowledge of the PSH policies and procedures relevant in this action.   These depositions included:   CJS Joshua Skaggs and CJS Katherine Semone for May 25, 2016; Deputy Michael Anthony and CPO Christopher Cook for May 26, 2016; and a 30(b)(6) deposition. (Doc. 41, Ex. B.)

These depositions went forward as noticed with one exception.  Sgt. Zachary Haisch's deposition was individually noticed for May 27, 2016, when he was also scheduled to appear as the Defendant's 30(b)(6) witness.  However, as established by the transcript from that date, Sgt. Haisch's individual deposition was not taken on that date which it was noticed for. (*See* Ex. 1, at 37-39.)[2]  Plaintiff's counsel have no plans to take Sgt. Haisch's individual deposition in this matter and, for clarity, have withdrawn the notice.[3]

After taking these depositions, it became apparent that each of these persons, and the corporate entity representative, had differing testimony from the verified interrogatory responses that specifically referenced facts and decisions concerning these same individuals.  These contradictions related to key facts crucial to Plaintiff's case such as: the eligibility criteria for the program; the criteria relied on to determine whether an individual could be banned from the facility (i.e., refused re-entry to the facility);

---

[2]  Unless otherwise noted, the Exhibits referenced herein are submitted contemporaneously with this opposition.

[3]  Defendant's counsel did not confer with Plaintiff's counsel about this matter prior to raising it in the Motion for Protective Order as required by Local Rule 3.01(g).  Had this happened, it would have been clear that Plaintiff is within the 10 deposition limit set by Fed. R. Civ. P. 30 and the Court's Scheduling Order, making that issue moot.

procedures for whether a reasonable modification or accommodation would be provided at PSH; the reasons why Plaintiff had been refused re-entry to the facility; and the policy underlying the decision to ban or deny Plaintiff re-entry to the facility.   Some specific examples include:

| Witness | Interrogatory Response | Deposition Testimony |
|---|---|---|
| CJS Katherine Semone | No. 3: States Semone had the authority to grant and did grant Plaintiff the reasonable modification of providing her with a boat (i.e., mat in plastic surface on the floor) without a doctor's note.<br><br>States Semone provided Plaintiff assistance with carrying her belongings into PSH.<br><br><br>States Semone had authority to and offered Plaintiff opportunity to stay in outside pod.<br><br>No. 5: States Semone was involved in the decision to advise Plaintiff that PSH was not conducive to her medical needs based on Plaintiff's inability to care for herself as required by PSH's rules which was based on Plaintiff admitted upon her arrival that she was not able to sit down or stand up from a mat located on the ground without assistance; and PSH eligibility rules specifically require residents to be able to sit down and care for themselves without assistance, pick up trash and assist in keeping facility clean.<br><br>No. 10:  Semone is identified as a staff member who advised Plaintiff that she did not meet the eligibility qualifications to reside at PSH. | Semone was not involved in Ms. Alvey's check-in to PSH, had no memory of seeing Alvey when she was admitted to PSH; was not working the shift when Alvey was admitted to PSH; and has no memory of seeing Ms. Alvey at PSH prior to the incident where she saw her laying on the floor when she was injured. (Ex. 2, at 19: 2-7, 27: 7-10, 28: 1-6, 120: 20-24.)<br><br>Semone has only made determinations that persons were not eligible to stay at PSH because they were not homeless. (Ex. 2, at 44: 8-21.)<br><br><br>Semone did not recall making a decision that PSH was not conducive to Alvey's needs; did not know who made the decision. (Ex. 2 at 108: 2-24, 109-110: 25-5.) |

| | | |
|---|---|---|
| CJS Christopher Cook | No. 5: States Cook was involved in the decision to advise Plaintiff that PSH was not conducive to her medical needs based on Plaintiff's inability to care for herself as required by PSH's rules which was based on: Plaintiff admitted upon her arrival that she was not able to sit down or stand up from a mat located on the ground without assistance; and PSH eligibility rules specifically require residents to be able to sit down and care for themselves without assistance, pick up trash and assist in keeping facility clean.<br><br>No. 10:  Cook is identified as a staff member who advised Plaintiff that she did not meet the eligibility qualifications to reside at PSH. | As part of Cook's job duties as a G4S security guard at PSH, it was not within his authority to make decisions about whether people were eligible or ineligible to stay at PSH. (Ex. 3, at 43: 8-11.)<br><br>Cook did not make the decision that Ms. Alvey was medically unit to stay at PSH and did not know who made that decision. (Ex. 3, at 43: 8-11, 64: 8-12.)<br><br>Cook had no knowledge of Ms. Alvey needing assistance with movement within PSH.  (Ex. 3, at 74: 11-17.) |
| Deputy Michael Anthony | No. 3: States with regard to Plaintiff's request to stay at PSH on the morning of June 21, 2014, Anthony had authority to offer and did offer Plaintiff the opportunity to stay in Pod #6.  Plaintiff rejected this accommodation and voluntarily left PSH.<br><br>No. 5: States Anthony was involved in the decision to advise Plaintiff that PSH was not conducive to her medical needs based on Plaintiff's inability to care for herself as required by PSH's rules which was based on: Plaintiff admitted upon her arrival that she was not able to sit down or stand up from a mat located on the ground without assistance; and PSH eligibility rules specifically require residents to be able to sit down and care for themselves | Anthony did not make the decision that Ms. Alvey was medically unit to stay at PSH; was not aware that anyone had made that determination; and had never made a decision while working at PSH that the facility was not conducive to a resident's medial needs.  (Ex. 4, at 123: 8-25, 124: 1-19, 125: 18-23.)<br><br>Anthony was not working in the morning of June 21, 2014, and would not have been involved in any decision to offer Ms. Alvey pod 6.  (Ex. 4, at 128: 9-25.) |

6

| | without assistance, pick up trash and assist in keeping facility clean. | |
|---|---|---|

*See* Ex. 2 (Deposition Transcript of CJS Katherine Semone, May 25, 2016); Ex. 3 (Deposition Transcript of CJS Christopher Cook, May 26, 2016); Ex.4 (Deposition Transcript of CJS Deputy Michael Anthony, May 26, 2016); Ex. 1 (Deposition of 30(b)(6) witness Sgt. Zachary Haisch, May 27, 2016).

Moreover, although Defendant's interrogatory responses specifically stated that several of these witnesses had made key decisions to ban Plaintiff from the facility and relied on certain program criteria in doing so, at depositions, these individuals disclaimed having made such decisions, or having relied on the criteria cited in the interrogatories, or denied having any personal knowledge of such decisions. *See* Chart, supra.

One of the most glaring factual inconsistencies are the statements in the interrogatories regarding eligibility criteria for the facility which were specifically refuted by Defendant's 30(b)(6) designees, including Sheriff Gualtieri himself. Sgt. Haisch, one of the 30(b)(6) witnesses, testified that the eligibility criteria for PSH are: that an individual is "over the age of 18" and "able to care for yourself without assistance in daily functions." (Ex. 1, at 45-46: 21-20.) Defendant Gualtieri, the second 30(b)(6) witness, testified that the eligibility criteria for PSH that an individual is "chronically homeless" and involved or would be involved in the criminal justice system, but that persons who are homeless can also stay at the facility until an appropriate placement is found for them. (Ex. 5, at 28: 5-22; 37-38: 15-12.) The contradictory testimony of these two 30(b)(6) witnesses, which is binding on the entity, is also contradictory to the verified interrogatory response which provides that the eligibility criteria for PSH is as follows: that residents must be able to

7

care for themselves, including eating, sitting down/getting up, walking, or using the restroom facilities; residents are also required to attend pod meetings held by case managers and meet with their assigned case managers to work to find employment and/or benefits so they can transition back from homelessness; residents are also required to help maintain the PSH facility by picking up trash and cleaning; and failure to contribute to maintaining the facility is grounds for assignment to the outside pod (#6). (Doc. 40-3, at Interrogatory Response No. 17.)   In fact, at the 30(b)(6) deposition, Defendant Gualtieri specifically discredited the eligibility criteria in the verified interrogatories.  (Ex. 5, at 41-44: 20-21).

Another example of factual assertions in the verified interrogatories that Plaintiff has been unable to corroborate is the response to interrogatory no. 14.  (Doc. 41-3, at 11.)  The interrogatory requested the number of available beds inside the facility at PSH that were occupied on June 20, 2014.  (*Id.*)  The response is that "All 56 bunk beds in the female dorm were occupied on June 20, 2014."  (*Id.*)  This is a key factual issue in this litigation because Plaintiff requested a reasonable modification or accommodation of a bed that was physically accessible to her because of her disabilities.   Plaintiff also requested this information in Plaintiff's First Request for Production dated March 8, 2016, to which Defendant's reply was "none."  (Ex. 6 & 7, Request No. 16.)  Despite the fact that Defendant provided a response to this interrogatory which presumably is based on evidence, Defendant has consistently advised Plaintiff that no such information can be retrieved from its electronic information system or from any other source.  (Ex. 8.)  Plaintiff is entitled to inquire concerning the basis for how Defendant calculated the occupancy of beds when there are no documents to support this factual assertion.

As a result of these issues in discovery, Plaintiff made an informed decision to issue a subpoena to take the deposition of Shannon Lockheart based on her verification of the interrogatories. Her verification makes her a fact witness with relevant information which Plaintiff has been unable to verify through any other discovery method.

The parties' counsel discussed Defendant's objections to Ms. Lockheart's deposition and were unable to resolve the matter.

## II.    MEMORANDUM OF LAW

### A.    Legal Standard

Fed. R. Civ. P. 26(c) provides that a party must demonstrate "good cause" to prohibit or limit discovery in a matter. The general rule is that "[p]rotective orders totally prohibiting a deposition are rarely granted absent extraordinary circumstances." *West Peninsular Title Co. v. Palm Bh. Ct*y., 132 F.R.D. 301 (S.D. Fla. 1990), (citing *Salter v. Upjohn Co.* 593 F.2d 649, 653 (5th Cir. 1979)).[4]

Fed. R. Civ. P. 33(b) requires that the interrogatory responses by a party must be signed by the party to whom they are directed; or if the party is a governmental entity, by an officer or agent, who must furnish the information available to the party. Interrogatories must be answered under oath; the person who makes the answers must sign and the attorney who objects must sign any objections. Fed. R. Civ. P. 33(b)(4). Where an attorney has verified interrogatory responses, and not the client, the attorney has effectively been made a witness. *See Saria v. Massachusetts Mut. Life Ins. Co.*, 228 F.R.D. 536, 538-39 (S.D. W. Va. 2005). Provided that individual has relevant information

---

[4] The case law of the Fifth Circuit prior to September 30, 1981, has been adopted as precedent by the Eleventh Circuit. *Bonner v. Pritchard*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

to the party's claim or defense and proportional to the needs of the case, he or she is subject to deposition by oral examination. *See* Fed. R. Civ. P. 26 & 30(a).

While the Federal Rules of Civil Procedure do not "explicitly prohibit the deposition of a party's attorney," the courts have held that the party seeking the deposition must show: (1) the deposition is the only practical means of obtaining the information; (2) the information sought will not intrude on the attorney's work product or attorney-client privilege; and (3) the information sought is relevant and crucial to the preparation of the case. *Axiom Worldwide, Inc. v. HTRD Group Hong Kong Ltd.*, 2013 WL 230241, at *3 (M.D. Fla. Jan. 22, 2013) (noting that the Eleventh Circuit has not yet adopted any test on this issue, but courts in this Circuit have often applied the test articulated in *Shelton*, 805 F.3d at 1327).

Applying these standards, Defendant has failed to demonstrate "good cause" for the entry of a protective order prohibiting Plaintiff from taking the deposition of Shannon Lockheart. As explained below, Plaintiff can demonstrate that under the Federal Rules of Civil Procedure and the factors relied on by courts to permit a deposition of a party's attorney, the deposition of Ms. Lockheart should be permitted.

**B.      The Deposition is Permissible Under the Federal Rules of Civil Procedure**

Since Ms. Lockheart verified the interrogatories as the representative of the governmental entity, she is the same as any other witness that has information about the truthfulness of the facts and information in the interrogatories. *See* Fed. R. Civ. P. 26, 33(b) & 30; *see also Knights Armament Co. v. Optical Systems Tech., Inc.*, 254 F.R.D. 463 (M.D. Fla. 2008) ("The purpose of verifying interrogatory responses is to have the party attest to the truth of the responses.") While a party representative does not need to

have personal knowledge of the facts submitted, the verification indicates that the representative is furnishing information that is available to the party. *Jimenez-Carillo v. Autopart Intern., Inc.*, 285 F.R.D. 668, 670 (S.D. Fla. 2012) (*quoting Shepherd v. Amer. Broadcasting Cos., Inc.*, 62 F.3d 1469, 1482 (D.C. Cir. 1995). This may be accomplished through an internal process developed by the entity, including conversations with corporate counsel. *Id.* However, of particular relevance here, "the representative must have a basis for signing the responses and for thereby stating on behalf of the corporation that the responses are accurate." *Id.* This is precisely the purpose of the deposition of Ms. Lockheart.

As stated in Plaintiff's subpoena, the subject matter of the deposition of Ms. Lockheart is limited to: "Ms. Lockhart's verification of Defendant's Verified Responses and Objections to Plaintiff's First Interrogatories and inquiries into the facts and documents that support her responses to the interrogatories." (Doc. 40-7, at 4.)

She may not have personal knowledge of the incident involving Ms. Alvey, but that is irrelevant because it is not the information that Plaintiff seeks to depose her about. Ms. Lockheart has knowledge of the facts that are attributed to certain witnesses (which they denied or contradicted in depositions), knowledge of who she spoke to in drafting the responses to the interrogatories, knowledge of what documents she reviewed and knowledge of whether certain responses were based on facts provided by witnesses or drafted solely by counsel. This is evidence needed by Plaintiff to evaluate the truthfulness and inconsistencies of the testimony provided in the interrogatories and in depositions by the same individuals. Any individual with relevant factual knowledge could be subject to a deposition concerning the factual basis for the interrogatory responses. The fact that

11

Defendant has chosen its General Counsel to be that witness does not negate the relevance of the information possessed. Further, the fact that Defendant asserts Ms. Lockheart has no relevant information is not credible because as the person who verified the interrogatories, this renders her knowledge about the facts that support the interrogatories relevant.

### C.   Plaintiff Meets the Test to Depose a Party's Attorney

#### 1.   The Deposition is the Only Means to Obtain the Information Sought

Plaintiff has no other means to discover whether the responses for certain witnesses which are sworn to as true facts in the interrogatory responses were actually provided by those witnesses, are actually true or were merely developed from documents reviewed by counsel.  To date, the depositions of seven witnesses, including two entity witnesses pursuant to Fed. R. Civ. P. 30(b)(6), have directly contradicted the responses in the interrogatories. *See* chart above in Sec. I. These contradictions involve critical facts that relate to proving the elements of Plaintiff's claim and refuting the defenses raised by the Defendant.

Without deposing Ms. Lockheart, it is impossible for Plaintiff to know whether specific witnesses actually have the knowledge that the interrogatories impute to them which is directly contradicted by what they testified to during depositions.  As stated in the verification only Ms. Lockheart has information about the following: the "responses to the Interrogatories were prepared with the assistance and advice of counsel and the assistance of employees of Defendant" [upon which Ms. Lockheart relied]; "the responses, subject to inadvertent or undiscovered errors, are based upon, and therefore

limited by, the records and information still inexistence, or presently collected" … "and are true to the best of my knowledge, information and belief." (Doc. 41-3, at 15.)

Plaintiff relies on Ms. Lockheart's sworn statement as to the truthfulness of the information contained in the verified interrogatories. However, Plaintiff has been unable to independently corroborate a number of key statements contained therein. Due to the inconsistencies between the witnesses and the interrogatories, the only option left for Plaintiff is to depose Ms. Lockheart to ascertain which witnesses or documents she relied on to verify the truthfulness of these statements. Plaintiff is otherwise prejudiced by not knowing the identity of documents and witnesses who can corroborate these statements that conflict with deposition testimony and are not verified by anyone other than Ms. Lockheart.

### 2. The Information Requested Does Not Intrude on Attorney-Client or Attorney Work Product Privileges

Defendant incorrectly claims a shield from discovery of the same relevant facts which were used to respond to the interrogatories because that individual is an attorney and compiled the interrogatory responses "with the assistance and advice of counsel." (Doc. 41-3, at 15.) However, Defendant cannot have it both ways; this is why attorneys generally do not verify interrogatories. Any person who had verified the interrogatories on behalf of a government entity would most likely have done so with assistance and advice from their attorneys. However, that would not mean that the person was immune from being deposed. If that were the case, no person who verified interrogatories on behalf of an entity could ever be deposed.

In addition, any arguments concerning attorney-client privilege or attorney work product privilege do not apply here. Ms. Lockheart is not the attorney of record for

13

Defendant in this action. Moreover, any arguable attorney-client or attorney work product privilege was waived by Ms. Lockheart when she signed the verified interrogatories and made herself a fact witness. Contrary to Defendant's argument, which lacks any declaration or other evidentiary support, that Ms. Lockheart lacks any personal knowledge as to the facts, she does have knowledge of the facts that are attributed to certain witnesses (which they denied or contradicted in depositions), knowledge of who she spoke to in drafting the responses to the interrogatories, knowledge of what documents she reviewed and personal knowledge of whether certain responses were based on facts provided by witnesses or drafted solely by counsel.

This deposition would reveal information that Plaintiff needs to know to prove her case, disprove Defendant's asserted defenses, discover the existence of any documents that were not produced which substantiate the facts in the interrogatories and to avoid further inconsistent witness testimony at trial.

Defendant also argues that because the verified interrogatories were prepared with conversations with counsel that the information that Plaintiff seeks through the deposition of Ms. Lockheart is privileged. This argument, as it relates to conversations with counsel of record, also lacks merit. Plaintiff is not seeking information about conversations with counsel, but rather the facts Ms. Lockheart relied on in verifying the contents of the interrogatories as true. If counsel of record believes that the deposition intrudes upon privileged information, the proper procedure, as with any deposition, is to object and instruct the witness not to answer. It is not grounds for disallowing a deposition to take place.

### 3.    The Information Sought is Relevant and Crucial to the Preparation of Plaintiff's Case

14

As established herein, Plaintiff has established that the information sought through the deposition of Shannon Lockheart is relevant and crucial to the preparation of Plaintiff's case.  For example, as noted infra in the chart in Section I, the following issues were contradicted in interrogatory responses and deposition testimony for the same persons:

- Which person or persons made the decision to ban or deny Ms. Alvey's re-entry to PSH in June 2014?

- What criteria, policy or guideline was the decision to ban or deny Ms. Alvey's re-entry to PSH in June 2014 based on?

- Specifically, who determined that Ms. Alvey was "medically unfit" to remain at PSH in June 2014 and what criteria was this decision based on?

- Which person or persons made the decision to refuse to return Ms. Alvey's medications and other personal property after she was banned from PSH in June 2014?

These questions remain inconsistently answered after numerous requests for production, interrogatories, four individual depositions of Defendant's witnesses and two depositions pursuant to Fed. R. Civ. P. 30(b)(6).  Plaintiff merely needs to obtain the factual bases for the responses in the interrogatories to determine which version of the facts are true.

### D.   Plaintiff Has Not Exceeded the Number of Depositions Permitted by Fed. R. Civ. P. 30 and the Court's Scheduling Order

Defendant's argument concerning this issue contains a fatal flaw.  While Plaintiff noticed the individual deposition of Sgt. Zachary Haisch for May 27, 2016, on the same date that Sgt. Haisch was produced to testify pursuant to Fed. R. Civ. P. 30(b)(6), the

individual deposition was not conducted. (*See* Ex. 1, at 37-39, attached hereto.) Had Defendant's counsel conferred with Plaintiff's counsel concerning this matter prior to filing Defendant's motion for protective order, Plaintiff's counsel would have clarified this and also informed counsel that Plaintiff had no intent of deposing Sgt. Haisch at any future date.[5] By Defendant's own calculation, without the individually noticed deposition of Sgt. Haisch, Plaintiff is only up to 10 depositions (including Ms. Lockheart) for witnesses who have been deposed or are scheduled to be deposed. (Doc. 41, at 14.)  Accordingly, this issue is moot.

The parties' counsel conferred about this issue on June 20, 2016, and were unable to reach agreement.  Defendant's counsel's position appears to be that although the deposition was noticed and not taken, this was only because Plaintiff's counsel did not have any questions for the witness at the conclusion of the 30(b)(6) deposition.  It seems if a deposition is not taken, it is not taken and does not count toward the numeric limit.

## CONCLUSION

Based on the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's Emergency Motion for Protective Order and grant such other relief as the Court may deem just and proper.  In the alternative, if the Court grants Defendant's motion and orders that Plaintiff cannot depose Ms. Lockheart, Plaintiff respectfully requests that the Court issue an order requiring Defendant to produce a non-attorney corporate representative to verify the interrogatories who can be subject to a deposition to clarify the inconsistencies between the interrogatories and witness testimony.

---

[5] After reviewing this argument, Plaintiff's counsel wrote to Defendant's counsel on June 19, 2016, and clarified this matter and asked that Defendant withdraw this argument to conserve the parties' and Court's resources since it was moot.  Plaintiff's counsel also served a Notice of Cancellation of this deposition on June 19, 2016, for further clarity on this matter.

Dated:  June 21, 2016                          Respectfully submitted,


By:          s/ Andrea Costello
ANDREA COSTELLO, Fla. Bar No. 532991
Andrea.costello@southernlegal.org
KIRSTEN CLANTON, Fla. Bar No. 17179
Kirsten.clanton@southernlegal.org
JODI SIEGEL, Fla. Bar No. 511617
Jodi.siegel@southernlegal.org
Southern Legal Counsel, Inc.
1229 NW 12th Avenue
Gainesville, FL 32601
(352) 271-8890
(352) 271-8347 (fax)

NANCY E. WRIGHT, Fla. Bar No. 309419
Law Office of Nancy E. Wright
3231 NW 47th Place
Gainesville, FL 32605
(352) 871.8255
newright.law@gmail.com

ATTORNEYS FOR PLAINTIFF

17

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via

electronic mail on June 21, 2016, to:

Bradley R. Hall
Tracey K. Jaensch
FORD & HARRISON LLP
101 E. Kennedy Boulevard, Suite 900
Tampa, Florida 33602
brhall@fordharrison.com
tjaensch@fordharrison.com
Attorneys for Defendant


     s/ Andrea Costello
ATTORNEY FOR PLAINTIFF