UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

AMBER ALVEY,

    Plaintiff,

v.                           Case No. 8:15-cv-1861-T-33AEP

BOB GUALTIERI, in his
official capacity as
Sheriff of Pinellas
County,

    Defendant.
_____/

**ORDER**

This matter comes before the Court pursuant to Defendant Bob Gualtieri's Motion to Dismiss For Lack of Subject Matter Jurisdiction (Doc. # 63), filed on August 23, 2016. Plaintiff Amber Alvey filed a response in opposition on September 15, 2016. (Doc. # 76). For the reasons that follow, the Motion is granted.

**I.  Background**

On June 20, 2014, Amber Alvey left her apartment in St. Petersburg, Florida, and sought shelter at Pinellas Safe Harbor (Safe Harbor), a shelter serving homeless individuals, which is run by Pinellas County. (Doc. # 49 at ¶¶ 7-10, 21). Alvey, who suffers from physical disabilities, requested a raised bed at the shelter as she had difficulty lifting

1

herself from her assigned mat on the floor. (Id. at ¶ 32). However, Safe Harbor did not provide her with a raised bed, even though some bunk beds were available that night. (Id. at ¶ 36).

During a head-count of the shelter's visitors later that night, Alvey fell and was injured as she tried to get up from the lower sleeping mat. (Id. at ¶ 38). She was taken to the hospital and attempted to return to Safe Harbor after midnight June 21, 2014. (Id. at ¶¶ 40-41).

At that point, according to Alvey, the staff of Safe Harbor would not allow her to re-enter the premises. (Id. at ¶¶ 41-42). Safe Harbor banned Alvey from the shelter because Safe Harbor's facility was not conducive to Alvey's medical needs. (Id. at ¶ 41).

On August 10, 2015, Alvey filed her Complaint against Gualtieri in his official capacity as Sheriff of Pinellas County, alleging that Safe Harbor intentionally discriminated against her in violation of Title II of the Americans with Disabilities Act (ADA) and failed to provide her with a reasonable modification of her sleeping arrangement in light of her disabilities. (Doc. # 1 at ¶¶ 56-64). Alvey seeks both injunctive relief and damages for the intentional

discrimination and injury she allegedly suffered at Safe Harbor. (Id. at 12).

After the conclusion of discovery and the filing of cross-motions for summary judgment, Gualtieri filed a motion to dismiss the injunctive relief claim for lack of standing, on August 23, 2016. (Doc. # 63). Alvey responded in opposition to the motion on September 15, 2016. (Doc. # 76).

## II. Legal Standard

Motions filed under Federal Rule of Civil Procedure 12(b)(1) question this Court's jurisdiction over the subject matter of the case. Motions to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) may attack jurisdiction facially or factually. Morrison v. Amway Corp., 323 F.3d 920, 924 n.5 (11th Cir. 2003). Where the jurisdictional attack is based on the face of the pleadings, the court merely looks to determine whether the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in the plaintiff's complaint are taken as true for purposes of the motion. Lawrence v. Dunbar, 919 F.2d 1525, 1529 (11th Cir. 1990).

In factual attacks, on the other hand, the court delves into the arguments asserted by the parties and the credibility of the evidence presented. Garcia v. Copenhaver, Bell, &

Assocs., 104 F.3d 1256, 1260–61 (11th Cir. 1997). As stated in Morrison, "Factual attacks challenge subject matter jurisdiction in fact, irrespective of the pleadings. In resolving a factual attack, the district court may consider extrinsic evidence such as testimony and affidavits." 323 F.3d at 925. In deciding a motion to dismiss filed under Rule 12(b)(1), this Court is not required to assume that the allegations in the Complaint are true. Rosenkrantz v. Markopoulos, 254 F. Supp. 2d 1250, 1251 (M.D. Fla. 2003); see also Goodman v. Sipos, 259 F.3d 1327, 1331 n.6 (11th Cir. 2001)(factually-based attacks on subject matter jurisdiction go beyond the pleadings and permit testimony and affidavits to be considered).

A plaintiff bears the burden of demonstrating that the Court has jurisdiction. Menchaca v. Chrysler Credit Corp., 613 F.2d 507, 511 (5th Cir. 1980). Once subject matter jurisdiction has been questioned, a plaintiff is required to "clearly allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute and the exercise of the court's remedial powers." Warth v. Seldin, 422 U.S. 490, 518 (1975).

In addition, courts may dismiss cases pursuant to Rule 12(b)(1) upon finding that the plaintiff's claims are

4

"clearly immaterial, made solely for the purpose of obtaining jurisdiction or are wholly unsubstantiated and frivolous." Lawrence, 919 F.2d at 1529 (quoting Eaton v. Dorchester Dev., Inc., 692 F.2d 727, 732 (11th Cir. 1982)); see also Bell v. Hood, 327 U.S. 678, 682–683 (1946).

### III. Analysis

Title II of the ADA prohibits discrimination in public services and transportation and states, "No qualified individual with a disability shall, by reason of such disability, be excluded from participation in, or be denied the benefits of services, programs, or activities of a public entity, or be subjected to discrimination by any public entity." 42 U.S.C. § 12132.

As stated in Shotz v. Cates, 256 F.3d 1077, 1079 (11th Cir. 2001):

> To state a claim under Title II of the ADA, a plaintiff must allege: (1) that he is a qualified individual with a disability; (2) that he was excluded from participation in or . . . denied the benefits of the services, programs, or activities of a public entity or otherwise discriminated against by such entity; (3) by reason of such disability.

(internal citations omitted).

Gualtieri moves to dismiss Alvey's claim for injunctive relief pursuant to Rule 12(b)(1) on the ground that Alvey

5

lacks standing to bring that claim, thus depriving the Court of jurisdiction. (Doc. # 63 at 1).

In order to meet the requirements of Article III standing, a plaintiff must establish that she has suffered an injury in fact, that the injury was causally connected to the defendant's actions, and that the injury would be redressed by a judgment in the plaintiff's favor. See Lujan v. Defs. of Wildlife, 504 U.S. 555, 560–61 (1992). In addition, concerning standing to seek injunctive relief, Lujan states:

> Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief if unaccompanied by any continuing present adverse effects. And the affiants' profession of an "intent" to return to the places that they had visited before — where they will presumably, this time, be deprived of the opportunity to observe animals of the endangered species — is simply not enough. Such "some day" intentions - without any description of concrete plans, or indeed even any specification of *when* the some day will be — do not support a finding of the "actual or imminent" injury that our cases require.

Id. at 564 (emphasis in original).

This proposition is also reflected in City of Los Angeles v. Lyons, 461 U.S. 95, 102 (1983)("exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects.")(internal citation omitted). The threat of future injury must be "real and

6

immediate — as opposed to merely conjectural or hypothetical." <u>Wooden v. Bd. of Regents of Univ. Sys. of Ga.</u>, 247 F.3d 1262, 1284 (11th Cir. 2001).

The Court finds that there is not sufficient evidence of a "real and immediate" threat that Alvey will seek emergency shelter at Safe Harbor in the future to establish standing for injunctive relief under Title II of the ADA. As Gualtieri notes, Alvey has never been homeless, had not stayed at a homeless shelter before coming to Safe Harbor, and has not stayed at a homeless shelter since she left Safe Harbor. (Doc. # 63 at 4). During her deposition, Gualtieri asked Alvey about her history of homelessness:

> Q: Have you ever been — have you ever stayed in a
>    homeless shelter?
> A: Have I ever before that?
> Q: Yeah
> A: No. Never.
> Q: Have you ever since that time?
> A: Not that I can remember.
> . . . .
> Q: It is true that when you went to sleep that night
>    at Safe Harbor you were not homeless?
> A: Right.

(Doc. # 51-1 Plf. Dep. at 113:4-10; 113:16-18).

At the time of her deposition, Alvey was living in Missouri in a leased apartment near her daughter. (<u>Id.</u> at 9:22-23; 10:1-9; 12:13-18). During that deposition, Alvey

7

indicated that she had not returned to Safe Harbor after June of 2014, and had no intention of doing so in the future:

> Q: After you got your medicine back and your other - whatever other stuff you had at Safe Harbor, on that day were you — you weren't trying to stay there, were you?
> A: No.
> Q: Did you ever try to stay there again?
> A: No.
> Q: Did you ever need to stay there again?
> A: No.
> Q: Do you need to stay there now?
> A: No.
> Q: Do you have any intention of going back and trying to stay there?
> A: No. I don't — I don't plan on it. Now I've got my own apartment with a lease and — so no.

(Id. at 143:18-144:7).

However, since the deposition, Alvey has moved back to Florida. (Doc. # 49-2). Alvey currently resides in Englewood, Florida, with her sister approximately seventy-five miles away from Safe Harbor. (Doc. ## 49-2 at ¶ 17; 63 at 6-7). Still, Alvey states that she might need to stay at Safe Harbor at some point in the future because she "would prefer to live in Pinellas County and want[s] to return there." (Doc. # 49-2 at ¶ 17). Alvey notes that her living situation has been uncertain for the two years since her visit to Safe Harbor as she has moved seven times during that period. (Id.). Therefore, Alvey concludes that "[i]t is reasonable that I could be expected to need safe shelter again, but I would not

8

be able to get access to the services at [Safe Harbor] under the current policies there." (Id.).

Alvey is correct that a "plaintiff's exposure to illegal conduct in the past is nonetheless 'evidence bearing on whether there is a real and immediate threat of repeated injury.'" Houston v. Marod Supermarkets, Inc., 733 F.3d 1323, 1336 (11th Cir. 2013)(quoting O'Shea v. Littleton, 414 U.S. 488, 496 (1974)). The ban that would prevent Alvey from returning to Safe Harbor remains in place, meaning that Alvey would be denied entry if she sought emergency shelter there again. (Doc. # 49 at ¶ 46); see also Houston, 733 F.3d at 1337 ("There is no indication in the record that the alleged architectural barriers in the Presidente Supermarket have been remedied. As a result, there is a 100 percent likelihood that Plaintiff Houston will suffer the alleged injury again when he returns to the store."). Nevertheless, Alvey still must show that the threat of future injury is beyond conjectural.

For example, in Houston, the Eleventh Circuit found that Houston did have standing to seek injunctive relief under Title III of the ADA against the defendant supermarket even though Houston lived in the next county thirty miles away and had visited the market infrequently. Houston, 733 F.3d at

1337. However, the facts of that case indicated that there was a serious likelihood that Houston would return to the supermarket. Although the supermarket was thirty miles away from his home, it was only two miles away from his lawyer's offices. Id. at 1336. Houston drove past the supermarket whenever he went to visit his lawyer. Id.

As Houston was an ADA "tester," Houston could convincingly show that he "'definitely' anticipat[ed] going to his lawyer's offices 'in the near future.'" Id. Furthermore, Houston declared that he would return to the supermarket if the barriers to entry were removed. Id. Under the totality of the circumstances of that case, the Eleventh Circuit found that Houston did have standing to seek injunctive relief. Id. at 1337.

In contrast, the threat of future injury to Alvey is hypothetical and contingent upon her moving back to Pinellas County and, once there, having an emergency need for shelter. Alvey's current residence, in a different county seventy-five miles away from Safe Harbor, reduces the likelihood of a "real and immediate" threat of future injury. See Lamb v. Charlotte Cty., 429 F. Supp. 2d 1302, 1309 (M.D. Fla. 2006)(finding that plaintiff alleging violations of Title II of the ADA could not establish standing for injunctive relief where he

10

lived seventy-five miles away from the library and community center at issue and there were other similar facilities closer to his home); Access for the Disabled, Inc. v. Rosof, No. 8:05-cv-1413-T-30-TBM, 2005 WL 3556046, at *2 ("The threat of future real and immediate injury is even more speculative in light of the fact that Plaintiff Cohen does not reside in Sarasota and his only connection to the area is as a 'frequent visitor.'"). While Alvey alleges that she wishes to return to Pinellas County, her stated intention to move there at an unspecified date in the future is conjectural.

Additionally, Alvey's history of unstable housing arrangements, without more, does not demonstrate that there is a "real and immediate" threat that Alvey will require shelter at Safe Harbor. Cf. Sunderland v. Bethesda Health, Inc., No. 13-80685-CIV-HURLEY, 2016 WL 2736087, at *10 (S.D. Fla. May 11, 2016)(rejecting plaintiffs' contention that "an elderly person suffering from a chronic, progressive medical condition necessarily demonstrates a 'real and immediate' threat of future hospitalization").

Alvey states that she may have an emergency need for shelter at some point in the future; however, the possibility of such a future emergency is speculative as she has never been homeless in the past and has not required emergency

11

shelter in the two years since she visited Safe Harbor. Cf. Connors v. W. Orange Healthcare Dist., No. 605-cv-647-Orl-31-KRS, 2005 WL 1500899, at *4 (M.D. Fla. June 23, 2005)(finding no standing where plaintiffs alleged only that they "live in the vicinity of the [defendant hospital], and must return to the defendant in the near future if an emergency exists" because the likelihood of future injury depended "on the entirely speculative potential of a future medical emergency, and [plaintiffs had] not alleged that such future medical conditions are likely to, or may possibly, arise").

Therefore, Alvey has not established the existence of a "real and immediate" threat of future injury. Accordingly, Alvey's claim for injunctive relief is dismissed for lack of standing. Although Alvey does not have standing to seek injunctive relief, Alvey's claims under Title II of the ADA premised on Safe Harbor's past acts of alleged discrimination survive.

Accordingly, it is hereby

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Defendant Bob Gualtieri's Motion to Dismiss (Doc. # 63) is **GRANTED.**

(2) Plaintiff Amber Alvey's claim for injunctive relief is **DISMISSED** for lack of subject matter jurisdiction.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 18th day of October, 2016.

                                            /s/ Virginia M. Hernandez Covington
                                            VIRGINIA M. HERNANDEZ COVINGTON
                                            UNITED STATES DISTRICT JUDGE

13